# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| FRANCISCO JOSE MERCHAN ROCHA, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> VERONICA MERANO FLOREZ, ) <br> ) <br> Respondent. ) <br> _____ ) | 2:14-cv-00051-RCJ-VCF <br><br> **ORDER** |

This is a Petition under the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 (the "Convention") and the United States' enabling law, the International Child Abduction Remedies Act (the "Act"). Pending before the Court is a Motion for Temporary Restraining Order (ECF No. 4). For the reasons given herein, the Court grants the motion.

## I.   FACTS AND PROCEDURAL HISTORY

Petitioner Francisco Jose Merchan Rocha and Respondent Veronica Molano Florez are the natural parents of a minor child, SMM, who was eleven years old as of the filing of the Verified Petition. (*See* V. Pet. ¶ 8, Jan. 10, 2014, ECF No. 1). On June 28, 2011, the parties divorced in Colombia, and a copy of the Decree of Divorce (the "Decree") is attached to the Verified Petition as Exhibit B. (*See id.*). According to the Decree and the Parenting Agreement, attached to the Verified Petition as Exhibit C, the Family Court of Usaquen, Colombia granted Petitioner custody of SMM by agreement, with SMM's habitual residence established in Bogota, Colombia, and it granted Respondent certain visitation rights. (*See id.* ¶¶ 9, 10 & Exs. B, C).

1  Petitioner authorized SMM to travel to Miami, Florida with her paternal grandparents, and to
2  continue therefrom to Las Vegas, Nevada to visit Respondent, to return to Colombia on August
3  15, 2013 to continue her studies in Medillin, Colombia, where she had been residing and
4  attending school at the time she left Colombia. (*See id.* ¶ 11 & Ex. D).  When Respondent
5  refused to return the child, Petitioner filed a police report in Colombia on August 22, 2013. (*Id.*
6  ¶ 13 & Ex. E).  Petitioner attempted to convince Respondent to return the child, but Respondent
7  refused and has ceased all contact with Petitioner. (*Id.*).  The Central Authority of Colombia
8  submitted Petitioner's Application for Return of Child to the U.S. Department of State on
9  September 19, 2013. (*Id.* ¶ 14 & Ex. F).

10  Petitioner sued in this Court pursuant to the Convention and the Act for return of the
11  wrongfully retained child.  He has asked for a temporary restraining order and a preliminary
12  injunction.

13  **II.  LEGAL STANDARDS**

14  **A.  Jurisdiction**

15  This Court has original jurisdiction over Petitions filed under the Convention. *See* 42
16  U.S.C. § 11603(a).  The Court may exercise its jurisdiction in this case because the child was
17  located within this Court's territorial jurisdiction, i.e., the State of Nevada, when the Verified
18  Petition was filed. *See id.* § 11603(b); V. Pet. ¶ 15.  Petitioner's previous application to the State
19  Department for assistance does not divest this Court of jurisdiction. *See* Convention art. XXIX.
20  Respondent is entitled to notice of the proceedings "in accordance with the applicable law
21  governing notice in interstate child custody proceedings." *Id.* 42 U.S.C. § 11603(c).  "In the
22  United States, the Parental Kidnapping Prevention Act ('PKPA') and the Uniform Child Custody
23  Jurisdiction Act ('UCCJA') govern  notice in interstate child custody proceedings." *Brooke v.*
24  *Willis*, 907 F. Supp. 57, 60 (S.D.N.Y. 1995) (citing *Klam v. Klam*, 797 F. Supp. 202, 205
25  (E.D.N.Y. 1992)).  The PKPA provides that "[b]efore a child custody or visitation determination

is made, reasonable notice and opportunity to be heard shall be given . . . ." 28 U.S.C. § 1738A(e). Nothing in the statute appears to prevent a temporary restraining order without notice that maintains the status quo as to physical custody itself—as Petitioner seeks here—where such an order is otherwise appropriate under Rule 65(b). The statute requires notice only "[b]efore a child custody or visitation determination is made . . . ." *Id.* The temporary restraining order Petitioner seeks preventing Respondent from removing the child from the State of Nevada before the hearing to determine the issue is manifestly not itself a decision as to child custody or visitation. Finally, the substantive standards of the Convention itself govern the merits of the present case. *See* 42 U.S.C. § 11603(d).

**B.     Standards for Return of a Wrongfully Retained Child**

The removal or retention of a child is "wrongful" where:

> it is in breach of rights of custody . . . under the law of the State in which the child was habitually resident immediately before the removal or retention; and at the time of removal or retention those rights were actually exercised . . . or would have been so but for the removal or retention.

Convention art. III. The "rights of custody" include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence, and those rights may arise by law, judicial or administrative decision, or by agreement with legal effect under the law of that State." *Id.* arts. III, V. The Convention applies to any child under sixteen years of age and who was habitually resident in a Contracting State immediately before the breach of custody or access rights. *Id.* art. IV. Colombia has been a Contracting State with respect to the United States since 1996. *See* Status Table, Convention of 25 October 1980 on the Civil Aspects of International Child Abduction, http://www.hcch.net/index_en.php?act= conventions.status&cid=24; Acceptances of Accessions, Colombia, http://www.hcch.net/ index_en.php?act=status.accept&mid=658. Judicial authorities of Contracting States are to act "expeditiously" with respect to Petitions for the return of children. Convention art. XI. Upon a

determination of wrongful removal or retention, the judicial authority "shall order the return of the child forthwith" where less than one year elapsed between the wrongful removal or retention and the Petition, which appears to be the case here. *See id.* art. XII.

Notwithstanding a finding of wrongful removal or retention, a Contracting State is not bound to return a child where the party opposing return shows: (1) that the person having care of the child was not actually exercising custody rights at the time of removal or retention or had consented to the removal or retention; (2) where there is a grave risk that the return of the child will expose the child to physical or psychological harm or otherwise place the child in an intolerable situation; or (3) where return would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms. *Id.* arts. XIII, XX.

Wrongful removal or detention under Article III need be satisfied by a petitioner by a preponderance of the evidence in order to be entitled to return of the child, *see* 42 U.S.C. § 11603(e)(1)(A), after which a respondent may avoid return by satisfying the first exception, *supra*, by a preponderance of the evidence, *see id.* § 11603(e)(2)(B) (citing Convention arts. XII, XIII), or by satisfying the second or third exceptions, *supra*, by clear and convincing evidence, *see id.* § 11603(e)(2)(A) (citing Convention arts. XIII(b), XX).[1]

### C.   Standards for a Temporary Restraining Order

Under Fed. R. Civ. P. 65(b), a plaintiff must make a showing that immediate and irreparable injury, loss, or damage will result to plaintiff without a temporary restraining order. Temporary restraining orders are governed by the same standard applicable to preliminary

---

[1] Part of the first exception—the "actual exercise" part—appears superfluous in light of the requirement that a petitioner make the opposite showing in an adversarial setting in order to be entitled to relief in the first instance. *See id.* § 11603(e)(1)(A); Convention art. III (requiring actual exercise of custody rights for removal or retention to be considered "wrongful"). The "consent" part of the first exception, however, does not appear superfluous.

injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("The standard for issuing a preliminary injunction is the same as the standard for issuing a temporary restraining order."). The standard for obtaining *ex parte* relief under Rule 65 is very stringent. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

The Court of Appeals in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. 7, 19–23 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Court of Appeals has recognized that the "possibility" test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*,

129 S. Ct. at 374) (reversing a district court's use of the Court of Appeals' pre-Winter, "sliding-scale" standard and remanding for application of the proper standard).

A Court of Appeals ruling relying largely on the dissenting opinion in *Winter* parsed the language of *Winter* and subsequent Court of Appeals rulings and determined that the sliding scale test remained viable when there was a lesser showing of likelihood of success on the merits amounting to "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). This case presents some difficulty in light of *Winter* and prior Court of Appeals cases. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Selecky*, *Selecky* controls. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel). In any case, the Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218–19 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)) (emphases added). The test is presented as a four-part conjunctive test, not as a four-factor balancing test, and the word "likely" modifies the success-on-the-merits prong in exactly the same way it separately modifies the irreparable-harm prong. In rejecting the sliding-scale test, the *Winter* Court emphasized the fact that the word "likely" modifies the irreparable-injury prong, *see id.* at 22, and the word modifies the success-on-the-merits prong the same way, *see id.* at 20. In dissent, Justice Ginsburg opined that she did not believe the Court was abandoning the rule that it was permissible to "award[ preliminary injunctive] relief based on a lower likelihood of harm when the likelihood of success is very high." *Id.* at 51 (Ginsburg, J., dissenting). But Justice Ginsburg,

like the majority, did not address whether she believed relief could be granted when the chance of success was *less than* likely.  A "lower likelihood" is still *some* likelihood.  We are left with the language of the test, which requires the chance of success on the merits to be at least "likely."

In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the merits.  According to a layman's dictionary, "likely" means "having a high probability of occurring or being true." Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/likely.  Black's defines the "likelihood-of-success-on-the-merits test" more leniently as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1012 (9th ed. 2009).  The Court must reconcile the cases by interpreting the *Cottrell* "serious questions" requirement to be in harmony with the *Winter*/*Selecky* "likelihood" standard, not as being in competition with it.  "Serious questions going to the merits" must therefore mean that there is at least a reasonable probability of success on the merits.  "Reasonable probability" appears to be the most lenient position on the sliding scale that can satisfy the requirement that success be "likely."

**III.   ANALYSIS**

First, the allegations and evidence attached to the Verified Petition indicate a strong likelihood of success on the merits under the Convention.  It appears that Petitioner had sole custody of SMM in Colombia and was exercising custody rights over her at the time Respondent allegedly wrongfully retained SMM in Nevada.  The Decree and Parenting Agreement indicate that Petitioner was to have full custody and control, and that Respondent was only to have limited visitation rights and an aspirational duty to support SMM financially.  The Verified Petition indicates that SMM was attending school when she departed and in fact only departed for the summer recess.  Even if SMM had been attending school in Medillin while Petitioner resided approximately 300 miles away in Bogota—which could be inferred from the Verified Petition—this is no indication that Petitioner was not exercising his custody rights.  On the

1  contrary, the fact that SMM was residing in another location precisely for educational

2  purposes—if that were the case—is good evidence that Petitioner was exercising his rights of

3  custody, because it takes an affirmative act of parenting to send a child to a remote location for

4  schooling.  And the fact that Petitioner had to request permission from the Colombian

5  government for SMM to leave Colombia to visit Respondent in the United States also shows that

6  he was actually exercising his rights when SMM departed. *See Abbott v. Abbott*, 560 U.S. 1,

7  13–15 (2010) (holding that even the mere right to decide whether a child may leave the country,

8  i.e., a *ne exeat* right, is a custody right capable of "exercise" under the Convention, potentially

9  even where there is only a *ne exeat* order with no parental consent provision).  Even if Petitioner

10 had in fact abandoned SMM in Colombia in the most literal sense—and there is no indication of

11 this—the nature of the letter Petitioner sent to the Colombian authorities before SMM's

12 departure indicates that Petitioner had the ability under Colombian law to control whether SMM

13 could leave Colombia.  Clearly, then, Petitioner exercised a *ne exeat* right at the time SMM

14 departed in the sense recognized by the *Abbott* Court. *See id.*

15         Petitioner has also made a strong showing that Respondent's retention of SMM in

16 Nevada beyond August 15, 2013 was wrongful based upon the letter attached to the Verified

17 Petition in which Petitioner asked the Colombian authorities to lift travel restrictions on SMM so

18 that she could visit her mother in Nevada until August 15, 2013 during her summer break, as

19 well as Petitioner's verified allegations that Respondent has wrongfully retained SMM in Nevada

20 beyond the scope of Petitioner's permission for SMM to remain.

21         Second, Petitioner has shown a likelihood of irreparable harm.  Petitioner need not show

22 that there is a likelihood of irreparable harm as to SMM's remaining out of his custody as a

23 general matter, because the preliminary relief he seeks via the present motion is not SMM's

24 immediate return.  Rather, because the relief Petitioner seeks via the present motion is a

25 restriction upon Respondent from removing SMM from the State of Nevada, he need only show

that irreparable harm would result if SMM were in fact removed from the State. He has made this showing. Upon the child's removal from the State of Nevada, this Court would have the option of staying or dismissing the proceedings. *See* Convention art. XII. The Court could also choose to keep the case open or transfer the proceedings to another appropriate district. Still, the exit of the child from the State of Nevada would almost certainly delay the proceedings by forcing Petitioner to engage in a jurisdictional cat-and-mouse game, and although the delay in adjudication necessary to ensure due process as required under the Convention is unavoidable, even a single hour of *wrongfully* caused delay is irreparable because the ultimate relief sought is the return of the child. Every moment of time the custodial parent wrongfully spends away from or without control of the child is time that cannot be replaced.

Third, the equities are evenly balanced in this case, as both parents stand to gain or lose the same thing: physical custody of the child.

Fourth, the public interest—which in the present context includes the interests of the populations of all Contracting States—tips sharply in favor of speedy resolution under the Convention, which would be interfered with by a removal of the child from the jurisdiction where Petitioner has instituted this action.

The Court therefore grants the Motion for Temporary Restraining Order (ECF No. 4) and enjoins Respondent and others from removing, or permitting or causing another to remove, the minor child SMM from the State of Nevada until after the hearing on the Motion for Preliminary Injunction (ECF No. 5). At that hearing, the parties should be prepared to argue and present evidence relating to the standards of law identified in Part II, *supra*, as well as any upon any other issues the parties believe are relevant.

///

///

///

CONCLUSION

IT IS HEREBY ORDERED that the Motion for Temporary Restraining Order (ECF No. 4) is GRANTED.

IT IS FURTHER ORDERED that a consolidated hearing pursuant to Rule 65(a)(2) shall be held on the pending Motion for Preliminary Injunction (ECF No. 5) in the Lloyd D. George Federal Courthouse in Las Vegas, Nevada (the "Hearing") at a time and date to be determined in a future order.

IT IS FURTHER ORDERED that Respondent shall bring the child SMM to the Hearing or otherwise cause her to appear.

IT IS FURTHER ORDERED that Respondent, her officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with the aforementioned persons are ENJOINED from removing, or permitting or causing another to remove, the minor child SMM from the State of Nevada.  The present Order is issued without notice in order to avoid the possibility that Respondent might remove the child from the State of Nevada upon notice but before the present order can be issued, thereby avoiding the Court's jurisdiction while also avoiding an order of contempt.

IT IS FURTHER ORDERED that this Order shall expire at 9:00 a.m. PDT on February 11, 2014.

IT IS SO ORDERED.

Dated this 28th day of January, 2014, at 9:00 a.m. PDT.

_____
ROBERT C. JONES
United States District Judge